**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
**(973) 645-6340**

**WILLIAM J. MARTINI**
   **JUDGE**

**LETTER OPINION**

February 15, 2006

Benjamin Levine
111 Dunnell Road
Maplewood, New Jersey 07040
*Attorney for Plaintiff*

Tamara L. Rudow
Deputy Attorney General of New Jersey
Richard J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, New Jersey 08625-0112
*Attorney for Defendant*s

   Re:   Rohan Dorsett v. New Jersey State Police, et al.
         <u>Civil Action No. 04-CV-5652 (WJM)</u>

Dear Litigants:

   This matter comes before the Court on Defendant's Second Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. There was no oral argument. Fed. R. Civ. P. R. 78. For the reasons stated below, Defendants' motion is **GRANTED IN PART and DENIED IN PART**.

**BACKGROUND**

   This civil rights action arises from an alleged racially-profiled traffic stop of the plaintiff, Rohan Dorsett. On February 15, 1998, Plaintiff, "a dark-skinned man, native of the nation of Dominica," was driving in a car on the Garden State Parkway along with two passengers, also "dark-skinned males." (Pl.'s Compl. 3.) At approximately 5:30pm, Plaintiff was stopped by defendant Dreher for driving in an "erratic manner." (*Id*.) Plaintiff was arrested and convicted of illegal possession of drugs with the intent to distribute. (*Id*. at 4.) Defendants Wagner and Silianessis aided in the arrest of Plaintiff. (*Id*. at 3). On November 30, 1998, Plaintiff was

sentenced to five years imprisonment and $2,205 in fines.  (*Id*.)  Plaintiff was paroled from prison in March 2003, held for deportation by the INS, and deported to Dominica in late October or early November 2003.  (*Id*.)

On April 24, 2003, Judge Lorraine Pullen vacated Plaintiff's conviction and dismissed Plaintiff's indictment upon the State's motion that a " 'colorable basis' exists to support an allegation of selective enforcement."  (*Id*. at 4-5; Aff. of Wendy Reek ("Reek Affidavit"), Exhibit 2.)  The State's Affidavit in support of its motion to vacate and dismiss Plaintiff's conviction stated "one could argue and a conclusion could be drawn by the Court that colorable issues of racial profiling are present," and therefore, it sought relief in the interests of justice for Plaintiff and other criminal defendants "[r]ather than litigating the issues of selective enforcement, whether generally or specifically."  (Reek Affidavit, Exhibit 2.)

On November 16, 2004, Plaintiff filed a complaint in the District of New Jersey alleging violations of his civil rights (pursuant to 42 U.S.C. §§ 1983, 1985, 1988, and the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments) and his rights under state law[1] resulting from his racially-profiled traffic stop.  (Pl.'s Compl. 1.)  Defendants are alleged to have participated and engaged in a pattern and practice of racially-motivated selective enforcement of traffic regulations in New Jersey.  (*Id*. at 5-6.)  Plaintiff seeks monetary damages and injunctive relief.[2]

Several stays were issued in this case pending developments in the Third Circuit in *Gibson v. State of New Jersey*.  411 F.3d 427 (3d Cir. 2005), *cert. denied*, 2006 U.S. LEXIS 2459 (March 20, 2006).  Defendants State of New Jersey, New Jersey State Police, and Superintendent of New Jersey State Police ("Superintendent"), as well as defendants Paul Dreher, Pete Stilianesis, John Perry, Thomas Flarity, and Edward Wagner (collectively, "State Troopers")[3] reactivated this current motion to dismiss pursuant to Rule 12(b)(6) on April 5, 2006.  (Def.'s 4/5/06 Letter 1.)

---

[1] Plaintiff's state law claims include: common law tort claims of assault and battery, false arrest, false imprisonment, malicious prosecution, and intentional infliction of emotional distress; discrimination claim pursuant to New Jersey Law Against Discrimination; and mistaken conviction and imprisonment statute pursuant to N.J. Stat. Ann. §§ 52:4C-1 et seq.  Plaintiff seeks pendent jurisdiction for the state law claims.  (Pl.'s Compl. 2.)

[2] Specifically, Plaintiff seeks an order requiring defendant State Police: (1) to cease and desist from racially-motivated selective enforcement of the traffic laws; (2) to maintain records of all traffic stops; (3) to install video and voice recording equipment in police vehicles and to keep recordings of traffic stops for a period of six years; (4) to provide public access to traffic stop recordings and documentation for a reasonable charge; (5) to establish grievance procedures for contesting traffic stops and disciplinary procedures for those found in violation of racial profiling; (6) to screen State police officer candidates for racial or national origin bias; and (7) to require that all State police officers participate in periodic anti-discrimination training.  (Pl.'s Compl. 7.)

[3] The Complaint also names "John Does" 1-10.

## ANALYSIS

Defendants bring this motion to dismiss on the following grounds: (1) 42 U.S.C. §1983 does not authorize suits against Defendants in their official capacities; (2) Plaintiff cannot hold defendant Superintendent liable under 42 U.S.C. §1983 based solely on a theory of respondeat superior; (3) Plaintiff's failure to abide by the notice provision of the New Jersey Tort Claims Act bars Plaintiff's common law tort claims; (4) Plaintiff fails to establish the necessary elements of common law malicious prosecution; (5) the New Jersey statutory claim for mistaken imprisonment only authorizes suits in state court against the New Jersey Department of Treasury; and (6) Plaintiff fails to establish the mandatory elements for injunctive relief.  (Def.'s 11/1/2005 Br. 2-3.)  As explained below, the Court grants Defendants' motion in part and denies its motion in part.

### A.  Standard of Review

In deciding a motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure, all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff.  *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).  In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents.[4]  *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts that could be proved consistent with the allegations," a court may dismiss a complaint for failure to state a claim.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Zynn v. O'Donnell*, 688 F.2d 940, 941 (3d Cir. 1982).

---

[4] In the various motion papers submitted to the Court, both Defendants and Plaintiff request that this Court consider documents attached to their motion papers.  Defendants ask that the Court consider and additionally take judicial notice under F.R.E. 201 of the following documents certified as true and accurate copies by Deputy Attorney General Wendy Allyson Reek: Affidavit of Paul K. Heinzel, Deputy Attorney General in Support of Motion to Vacate Convictions dated April 19, 2002; Order of Judge Lorraine Pullen J.S.C. dated April 24, 2003 Vacating Conviction and Dismissing Indictment in the matter of *State of New Jersey v. Rohan Dorsett*; and Memorandum Opinion of the Honorable John C. Lifland, U.S.D.J., dated February 18, 2004, in the matter of *James Lane v. Christine Todd Whitman*, Federal Action 02-4290.  As these are matters of public record and are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," this Court grants Defendants' request for judicial notice.  F.R.E. 201(b).  Moreover, we note that there is no risk of unfair prejudice or surprise to Plaintiff as Plaintiff has included Judge Pullen's Order and Heinzel's Affidavit in his own submissions.  As these public records are integral to the allegations in this case and this motion, the Court will consider these documents in its evaluation of Defendants' motion to dismiss.
   Plaintiff requests that the Court consider seven additional documents attached to his brief in opposition to Defendants' motion.  These documents relate to reports and investigations by various agencies and organizations.  As these documents are not relevant to the issues in this motion nor integral to the complaint, we decline to consider these documents.

## B. Federal claims against Defendants in their official capacities

Defendants argue that U.S.C. § 1983 does not authorize suits against states, arms of states, and individuals in their official capacity. (Def.'s 11/1/05 Br. 12.) The Court finds the Defendants' argument persuasive insofar as the State of New Jersey, the New Jersey State Police, and the Superintendent and State Troopers in their official capacities are not persons within the meaning of § 1983 and § 1985.

### 1. State liability

A State is not a "person" within the meaning of § 1983. *Will v. Mich Dep't of State Police*, 491 U.S. 58 (1989). Thus, a state cannot be sued under § 1983. Furthermore, a subdivision of the state is not a "person" within the meaning of § 1983 if it acts as an alter ego or arm of the state. *See id.*, at 70 (if a subdivision of a state is an arm of the government for Eleventh Amendment purposes, it is not a "person" for purposes of § 1983); *Fitchik v. N.J. Transit Rail Operations*, 873 F.2d 655, 658-59 (3d Cir. 1989)(holding that the Eleventh Amendment immunity extends to those alter egos and arms of the state). This Court finds, in agreement with other courts within this district, that the New Jersey State Police is an arm of the State of New Jersey and, thus, is not subject to suit under § 1983. *See e.g.*, *Wilson v. New Jersey State Police*, 2006 U.S. Dist. LEXIS 60514 (D.N.J. August 15, 2006); *Longoria v. State of N.J.*, 168 F. Supp. 2d 308, 315-16 (D.N.J. 2001); *Simmerman v. Corino*, 804 F. Supp. 644, 650 (D.N.J. 1992).

As Defendants have request that "any federal claims against Defendant[s] . . . be dismissed," this Court will also dismiss the U.S.C. § 1985 claims against the State of New Jersey and the New Jersey State Police. (Def.'s 11/1/05 Br. 13). The analysis of the word "person" is the same under § 1983 and § 1985. *See Flesch v. E. Pa. Psych. Inst.*, 434 F. Supp. 963, 975 (E.D. Pa. 1977)(noting that although the Supreme Court has not explicitly decided the issue, courts are in agreement that the same analysis of the word "person" applies to evaluations of § 1983 and § 1985). Plaintiff does not state an independent cause of action under § 1988 as that section pertains to the applicable law in civil rights actions and awards of attorneys and expert fees. Accordingly, the Court will dismiss the § 1983 and § 1985 claims against the State of New Jersey and New Jersey State Police.

### 2. Liability of the individual defendants in their official capacities

Defendants contend that the federal claims against the Superintendent and State Troopers in their official capacities should similarly be dismissed for not falling within the meaning of the word "person" for purposes of § 1983. (Def.'s 11/1/05 Br. 12-13; Def's 4/5/06 Letter 1.) The Court agrees. A suit against an official of the state while acting in his/her official capacity is not distinguished from a suit against the state itself, unless the official is sued for violating federal law, and prospective injunctive relief is sought against the official. *See Frew v. Hawkins*, 540 U.S. 431, 437 (2004)(permitting § 1983 suits for prospective injunctive relief against state

officials acting in violation of federal law); *Will*, 491 U.S. 58, n.10 (1989)(citing *Kentucky v. Graham*, 473 U.S. 159, at 167 n. 14 (1985) and *Ex parte Young*, 209 U.S. 123 (1908)).  Plaintiff does seek prospective injunctive relief, but such relief is sought only against defendant State Police.  With regards to defendants Superintendent and State Troopers, Plaintiff solely seeks monetary damages.  Thus, Plaintiff's claims against Superintendent and State Troopers fail to meet the exception to official capacity immunity.  Accordingly, Plaintiff's § 1983 and § 1985 claims against the Superintendent and State Troopers in their official capacities will be dismissed.

C.     **Federal claims against the Superintendent**

Defendant Superintendent further seeks dismissal of the federal constitutional claims asserted against him in his official and individual capacity and argues that § 1983 does not authorize actions based solely on the theory of respondeat superior.  (Def.'s 11/1/05 Br. 13-15.)  The Court agrees.  In a civil rights action, a defendant's liability cannot be premised only under a theory of vicarious liability or respondeat superior and requires personal involvement by the individual.  *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  *Rode*, 845 F.2d at 1207.  Those allegations, however, must be made with appropriate particularity.  *Id*.

In the complaint, Plaintiff merely alleges that defendant Superintendent was the State Troopers' "superior" and responsible for "their training, supervision and conduct" and for "enforcing the regulations of the New Jersey State Police and for ensuring that the New Jersey State Police personnel obey the laws of the State of New Jersey and of the United States."  (Pl.'s Compl. 3.)  These allegations alone are insufficient to state a claim of liability in civil rights actions.[5]  To provide support for his allegation that defendant Superintendent was personally involved in the violation of his federal rights, Plaintiff asserts that racial profiling pervaded all levels of the New Jersey police hierarchy.  (Pl.'s 11/15/05 Br. 1.)  Even if the Court were to accept that racial profiling was pervasive, the Court could not reasonably surmise that defendant Superintendent, specifically, directed or had actual knowledge of the alleged harms suffered by Plaintiff.  This conclusion is further supported by the fact that Plaintiff has failed to identify which, if any, Superintendent was personally involved.  Thus, Plaintiff's opposition is unpersuasive as Plaintiff fails to allege that defendant Superintendent was personally involved.  The Court finds that defendant Superintendent's alleged misconduct is based solely on his status as supervisor of State Troopers.  Accordingly, Defendants' motion to dismiss the § 1983 claims against defendant Superintendent is granted.

---

[5] The Court accepts Plaintiff's argument that liability may be imposed on a superior if a plaintiff alleges that the superior had personally directed the violation or had acquiesced to the violation with actual knowledge.  (Pl.'s 4/21/05 Br. 9.)  Such allegations, however, are noticeably absent from Plaintiff's complaint.

E.   **Common law tort claims**

Defendants seek dismissal of Plaintiff's common law tort claims for failure to abide by the New Jersey Tort Claims Act's 90-day notice provision. (Def.'s 11/1/05 Br. 17.) Defendants contend that failure to abide by the notice provision is an absolute bar to Plaintiff's common law tort claims before this Court. (*Id*. at 17-18.) Although the Court acknowledges that Plaintiff failed to abide by the 90-day notice provision, the Court will not dismiss Plaintiff's intentional common law tort claims for this failure. The New Jersey Tort Claims Act states that no action will be brought against a public entity or public employee unless a notice of claim is signed and filed with the public entity within 90-days of accrual of the cause of action. N.J. Stat. Ann § 59:8-3. With regards to intentional common law tort claims, however, plaintiffs are only required to abide by the notice provision for claims accrued after June 29, 2004. *See Lassoff v. State of New Jersey*, 414 F. Supp. 2d 483, 490 (D.N.J. 2006)(citing *Velez v. City of New Jersey*, 180 N.J. 284, 286 (2004)). Although there is disagreement between the parties regarding the appropriate accrual date,[6] the parties agree that the accrual date was before June 29, 2004, the effective date imposing the 90-day notice provision on intentional torts. Thus, Plaintiff's lack of compliance with the notice provision does not bar Plaintiff's intentional common law tort claims. As Defendants rely exclusively on this theory in addressing Plaintiff's common law tort claims, Defendants' motion to dismiss the intentional common law tort claims is denied.

F.   **Malicious prosecution claims**

Defendants argue that Plaintiff's malicious prosecution claim should be dismissed for failure to establish the mandatory elements of malicious prosecution. The Court agrees. Under both § 1983 and State law, Plaintiff must establish, among others, (1) a lack of probable cause for proceeding with the criminal action and (2) that prior criminal proceedings ended in plaintiff's favor in order to sustain a malicious prosecution claim. *See Est. of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir 2003); *Lind v. Schmid*, 67 N.J. 255, 262 (1975). First, Plaintiff has not established that Defendants lacked probable cause for proceeding with his drug conviction. Plaintiff was prosecuted and convicted of illegal possession of drugs with the intent to distribute. Plaintiff challenges Defendants' probable cause in stopping Plaintiff for the alleged traffic violation, but Plaintiff does not deny that Defendants had probable cause to prosecute Plaintiff for possession of drugs with the intent to distribute. Therefore, Plaintiff cannot claim that there was no probable cause to proceed with his prosecution for possession of drugs. Second, the Plaintiff was not "innocent of the crime charged in the underlying prosecution" as required under *Hector v. Watt*. 235 F.3d 154, 156 (3d Cir. 2000). Again, the operative fact is that Plaintiff has not alleged innocence of the underlying crime for which he was convicted. Plaintiff's conviction was overturned because there were "colorable issues" of racial profiling, not because Plaintiff was innocent of drug possession. Thus, Plaintiff has not established two essential elements

---

[6] Defendants contend that the accrual date for Plaintiff's common law torts is on the date of the traffic stop, February 15, 1998. (Def.'s 11/1/05 Br. 16.) Plaintiff argues that the appropriate accrual date is the date of Judge Pullen's Order vacating Plaintiff's indictment and conviction, April 24, 2003. (Pl.'s 4/21/05 Br. 12.)

necessary to sustain his malicious prosecution claim. Other courts in this district have similarly concluded that a claim of malicious prosecution cannot be sustained where a plaintiff's drug possession conviction is overturned for presenting colorable issues of racial profiling for the traffic stop. *See Wilson v. New Jersey State Police*, 2006 U.S. Dist. LEXIS 60514 (D.N.J. 2006)(unreported); *Lane v. Whitman*, 2004 U.S. Dist. LEXIS 29983 (D.N.J. 2004)(unreported). Accordingly, Plaintiff's malicious prosecution claim is dismissed.

### G.   New Jersey statutory claim for mistaken imprisonment

Defendants contend that Plaintiff's claim under New Jersey's mistaken conviction and imprisonment statute (N.J. Stat. Ann. §§ 52:4C-1, et seq.) should be dismissed for failure to file in the proper forum and failure to name the Department of Treasury as a defendant. (Def.'s 11/1/05 Br. 21.) N.J. Stat. Ann. § 52:4C-2 authorizes individuals, who were convicted and imprisoned for a crime that they did not commit, to bring suits for damages against the Department of Treasury in New Jersey Superior Court. Plaintiff has neither named the Department of Treasury as a defendant nor brought his claim in the specified forum. Furthermore, the Court finds that New Jersey has not explicitly waived its Eleventh Amendment immunity by adopting N.J. Stat. Ann. § 52:4C-1, and therefore, Plaintiff may not bring a suit before this Court under the statute.[7]   Accordingly, Plaintiff's claim under this statute is dismissed.

### H.   Injunctive relief

Defendants argue that the injunctive relief requested by Plaintiff must be dismissed because Plaintiff's risk of irreparable injury is not immediate and merely prospective. (Def.'s 11/1/05 Br. 22.) The Court finds that a decision on Plaintiff's requested injunctive relief would be premature at this time. Plaintiff seeks permanent, not preliminary, injunctive relief. Defendants' arguments merely address the standard of review for granting preliminary, not permanent, injunctive relief. In granting permanent injunctive relief, the Court must balance the following factors: "(1) that [the Plaintiff] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3)

---

[7] The Eleventh Amendment immunizes a state and its agencies from monetary suits brought by individuals in federal court. *See U.S. Const. amend XI*; *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). There are two exceptions to a state's immunity: (1) clear waiver by the state or (2) abrogation by federal statute. *See A.W. v. Jersey City Pub. Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). Waiver of a state's sovereign immunity must be made "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Id*. (internal citations omitted). N.J. Stat. Ann. § 52:4C-1 provides: "any person convicted and subsequently imprisoned for one or more crimes which he did not commit may, under the conditions hereinafter provided, bring a suit for damages in Superior Court against the Department of the Treasury." This specific statutory language indicates the state's consent to be narrowly sued in state court and is insufficient to constitute a waiver of its Eleventh Amendment immunity in federal courts. Therefore, the Court cannot conclude that New Jersey waived its immunity by adopting the statute.

that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Ebay, Inc. v. Mercexchange*, 126 S. Ct. 1837, 1839 (2006).  As the Court's inquiry will require further information and submissions from the parties regarding injury and potential hardships, the Court will decline to address the issue at this stage.  Accordingly, the Court will deny Defendants' motion to dismiss Plaintiff's claim for injunctive relief.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted in part and denied in part.   An appropriate order follows.


s/ William J. Martini
**William J. Martini, U.S.D.J.**